**Case No. 24-6871**
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

UNIMAX COMMUNICATIONS, LLC,

*Appellant,*

v.

T-MOBILE USA, INC.,

*Appellee.*

On Appeal from the United States District Court for
the Western District of Washington
Case No.: 2:23-cv-01830-KKE
The Honorable Kymberly K. Evanson
_____

**APPELLANTS REPLY BRIEF**
_____

CHUNG, MALHAS & MANTEL, PLLC
Edward C. Chung, WSBA# 34292
1037 NE 65th Street, Suite 80171
Seattle, Washington 98115
*Attorney for Appellant* Unimax Communications, LLC

## TABLE OF CONTENTS

PAGE

I. APPELLANT'S REPLY & COUNTERARGUMENT……………………………1

    A.   Pursuant to U.S. Supreme Court and Ninth Circuit Authority, an Order Vacating the Lower Court's Dismissal and Remanding this Matter for Further Proceedings is Proper as Both the U.S. District Court and T-Mobile Answering Brief Ignore that Federal Rule of Civil Procedure 12(b)(6) Motions are Rarely Granted Where a Cognizable Legal Theory has Been Presented………………………..……………1

    B.   T-Mobile's Oral Assurances in January 2023 Constituted a Binding Modification and Waiver of the Contract's Cancellation Provision……………………………………………..2

    C.   T-Mobile's Contractual Right to Cancel Purchase Orders at Will and Without Penalty Constitutes Both Substantive and Procedural Unconscionability and Should Not Be Enforced...................5

    D.   Under Well-Established U.S. Supreme Court and Ninth Circuit Precedent, a Declaratory Judgment Claim is not Duplicative of a Breach of Contract Claim Where it Seeks Resolution of a Distinct Legal Issue, Such as the Enforceability of a Contractual Provision………………………..……7

    E.   Both Under U.S. Supreme Court and Ninth Circuit Authority, Misrepresentations of Present Intent are Actionable as Fraud or Negligent Misrepresentation………………..…13

    F.   The Court's Failure to Correct Misapplication of Substantive Law Under the UCC, and its Refusal to Allow Even a Single Opportunity to Further Amend a Complex Commercial Pleading…………………………………………………..…...17

CONCLUSION…………………………………………………………………18

CERTIFICATE OF COMPLIANCE……………………………………………..…19

CERTIFICATE OF SERVICE…………………………………………………..20

i

# TABLE OF AUTHORITIES

<u>***Cases***</u>

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................. *passim*

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) .................................................... 5,6

*Balderas v. Countrywide Bank, N.A.*,
  664 F.3d 787 (9th Cir. 2011) ...................................... 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................... 1,16

*Chavarria v. Ralphs Grocery Co.*,
  733 F.3d 916 (9th Cir. 2013) ............................................. *passim*

*Circuit City Stores, Inc. v. Adams*,
  279 F.3d 889 (9th Cir. 2002) ...................................... 6

*Cooper v. Pickett*,
  137 F.3d 616 (9th Cir. 1997) ...................................... 16

*Do Sung Uhm v. Humana, Inc.*,
  620 F.3d 1134 (9th Cir. 2010) ................................... 15

*DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Café & Takeout III, Ltd.*,
  30 F.3d 1088 (9th Cir. 1994) ...................................... 4

*Flores v. Transamerica HomeFirst, Inc.*,
  93 Cal. App. 4th 846 (2001) ...................................... 6

*Gilligan v. Jamco Dev. Corp.*,
  108 F.3d 246 (9th Cir. 1997) ...................................... 1

*Government Employees Ins. Co. v. Dizol*,
  133 F.3d 1220 (9th Cir. 1998) (en banc) ..................... 8

*In re GlenFed, Inc. Sec. Litig.*,
  42 F.3d 1541 (9th Cir. 1994) (en banc) ...................... 15

*Johnson v. Lucent Techs. Inc.*,
  653 F.3d 1000 (9th Cir. 2011) ................................... 2

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ...................................................... 9

*Kwan v. SanMedica Int'l*,
    854 F.3d 1088 (9th Cir. 2017) ................................................. 1,11

*L.K. Comstock & Co. v. United Engineers & Constructors, Inc.*,
    880 F.2d 219 (9th Cir. 1989) ...................................................... 4

*Lazar v. Superior Court*,
    12 Cal. 4th 631 (1996) ............................................................. 15

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ...................................................... 2

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
    551 U.S. 877 (2007) ................................................................. 12

*Leingang v. Pierce County Med. Bureau, Inc.*,
    131 Wash. 2d 133, 930 P.2d 288 (1997) ................................... 12

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) ............................................................. 8,10

*Nagrampa v. MailCoups, Inc.*,
    469 F.3d 1257 (9th Cir. 2006) (en banc) ..................................... 7

*Pac. Nw. Shooting Park Ass'n v. City of Sequim*,
    158 Wash. 2d 342–52, 144 P.3d 276 (2006) ......................... 11,13

*Pacific Far East Line, Inc. v. United States*,
    394 F.2d 990 (9th Cir. 1968) ...................................................... 3

*Pleas v. Seattle*,
    112 Wash. 2d 794, 774 P.2d 1158 (1989) ................................. 12

*Quelimane Co. v. Stewart Title Guar. Co.*,
    19 Cal. 4th 26 (1998) .............................................................. 12

*Rick-Mik Enters., Inc. v. Equilon Enters. LLC*,
    532 F.3d 963 (9th Cir. 2008) .................................................... 12

*Samica Enters. LLC v. Mail Boxes Etc. USA, Inc.*,
    637 F. Supp. 2d 712 (C.D. Cal. 2008) ........................................ 4

*Seattle Audubon Soc'y v. Moseley*,
    80 F.3d 1401 (9th Cir. 1996) ........................................................ 8

*Truxton Inc. v. United States*,
    897 F.2d 1169 (9th Cir. 1990) ..................................................... 3

*United States v. City of Redwood City*,
    640 F.2d 963 (9th Cir. 1981) ....................................................... 1

*United States v. Georgia-Pacific Co.*,
    421 F.2d 92 (9th Cir. 1970) ......................................................... 5

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ................................................... 15

**_Statutes_**
28 U.S.C. § 2201 ............................................................................ 8

**_Rules_**
Fed. R. App. P. 32 ........................................................................ 18

Federal Rule of Civil Procedure 9 ............................................... 15

Federal Rule of Civil Procedure 12 ............................................ 1,2

Rule 8 ........................................................................................... 13

Rule 9 ................................................................................... *passim*

Rule 12 ................................................................................. *passim*

rule 12 ......................................................................................... 16

**_Other_**
*Restatement (Second) of Torts*
    § 530 (1995) ............................................................................. 14

iv

## I.   A<small>PPELLANT'S</small> R<small>EPLY &</small> C<small>OUNTERARGUMENT</small>

A.   Pursuant to U.S. Supreme Court and Ninth Circuit Authority, an Order Vacating the Lower Court's Dismissal and Remanding this Matter for Further Proceedings is Proper as Both the U.S. District Court and T-Mobile Answering Brief Ignore that Federal Rule of Civil Procedure 12(b)(6) Motions are Rarely Granted Where a Cognizable Legal Theory has Been Presented.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. In evaluating such a motion, the court must accept as true all factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Ninth Circuit has repeatedly emphasized that Rule 12(b)(6) motions are "viewed with disfavor" and are rarely granted. *See*, *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) ("The Rule 12(b)(6) motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted."); *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981) (noting the "liberal" policy in favor of permitting claims to proceed) **Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or fails to allege facts sufficient to support a cognizable claim.** *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017); *emphasis added*. The court's role is not to evaluate whether the plaintiff is likely to prevail, but simply whether the complaint states "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

1

Moreover, in the Ninth Circuit, Rule 12(b)(6) dismissal is improper where the complaint, read as a whole, and *drawing all inferences in the plaintiff's favor, sets forth sufficient factual allegations to raise a right to relief above the speculative level*. *See*, *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011); *emphasis added*. Courts are particularly hesitant to grant dismissal where there remains any possibility that discovery might yield facts supporting the claim. See *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ["**Dismissal without leave to amend is improper unless it is clear… that the complaint could not be saved by any amendment.**"].

In sum, given the liberal pleading standards embodied in the Federal Rules and the Ninth Circuit's clear guidance disfavoring Rule 12(b)(6) dismissal, such motions are rarely granted, particularly in this case where Unimax's complaint presented a plausible narrative and alleged sufficient facts to suggest a viable legal theory.

B.  T-Mobile's Oral Assurances in January 2023 Constituted a Binding Modification and Waiver of the Contract's Cancellation Provision.

T-Mobile's cancellation of purchase orders was not consistent with the contractual terms. T-Mobiles oral assurances in January 2023 created a binding modification and waiver of the cancellation provision. Under Ninth Circuit authority, courts have recognized that oral modifications to contracts may be enforceable if supported by consideration or if the parties conduct demonstrates

2

mutual assent to the modification. T-Mobiles assurances induced reliance, which as a matter of law estops T-Mobile from invoking the cancellation clause.

Under well-settled Ninth Circuit authority, a contract may be modified or a provision waived through oral assurances and conduct, even where the contract contains a clause requiring written modifications. This principle reflects the broader federal common law of contracts and applies with particular force when the parties' subsequent actions or representations are inconsistent with strict enforcement of original terms.

### 1. *Oral assurances effect a binding modification*

The Ninth Circuit has held that **"[a] contract modification is a change to one or more contract terms which introduces new elements or cancels others but leaves the general purpose and effect of the contract undisturbed**." *Pacific Far East Line, Inc. v. United States*, 394 F.2d 990, 994 (9th Cir. 1968); *emphasis added*. A valid modification may be established by oral agreement, even if the original contract purports to require that all modifications be in writing. *See*, *Truxton Inc. v. United States*, 897 F.2d 1169, 1174 (9th Cir. 1990) (noting that parties may orally modify a contract despite a "no oral modification" clause if the parties clearly intend to do so). Here, the oral assurances made in January 2023— communicated after the execution of the original agreement—modified the effect and enforceability of the cancellation provision. By explicitly assuring the other party that performance could continue and that the contract would not be

3

terminated according to the original cancellation clause, the speaker waived the right to invoke that provision and induced reliance on continued contractual performance.

### 2. *Waiver may be Implied from Conduct and Oral Representations*

Waiver is "the voluntary relinquishment of a known right," and under Ninth Circuit law, "a party may waive a contract provision, either expressly or by conduct so inconsistent with an intent to enforce the right as to induce a reasonable belief that it has been relinquished." *L.K. Comstock & Co. v. United Engineers & Constructors, Inc.*, 880 F.2d 219, 234 (9th Cir. 1989); see also *DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Café & Takeout III, Ltd.*, 30 F.3d 1088, 1091 (9th Cir. 1994).The oral assurances made in January 2023, particularly when coupled with the Unimax's continued performance in reliance on them, demonstrate a clear waiver of the right to enforce the cancellation clause. Courts have found such waiver enforceable where one party knowingly leads the other to believe that strict compliance with a contractual provision will not be required. *See*, *Samica Enters. LLC v. Mail Boxes Etc. USA, Inc.*, 637 F. Supp. 2d 712, 723 (C.D. Cal. 2008) [applying Ninth Circuit principles and finding waiver through oral representations and conduct].

### 3. *Estoppel reinforces enforcement of the oral modification and waiver*

Moreover, under principles of equitable estoppel recognized by the Ninth Circuit, a party who induces another to rely on its representations or conduct may not later

repudiate those assurances. As stated in *United States v. Georgia-Pacific Co.*, 421 F.2d 92, 96 (9th Cir. 1970), "***one who has reasonably relied on the conduct of another may assert estoppel to prevent the latter from taking a position inconsistent with that conduct.***" Where, as here, the party asserting modification detrimentally relied on the oral assurances by continuing performance or foregoing other opportunities, estoppel bars the enforcing party from reinstating the original cancellation provision.

C.      T-Mobile's Contractual Right to Cancel Purchase Orders at Will and Without Penalty Constitutes Both **Substantive** and **Procedural** Unconscionability and Should Not Be Enforced.

The U.S. Supreme Court has recognized that "[u]nconscionable contracts or clauses are unenforceable as a matter of public policy." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 340 (2011). The doctrine protects against "oppressive terms" in contracts where one party has superior bargaining power and uses it to impose unfair terms on the weaker party. The Ninth Circuit follows the general rule that unconscionability has both procedural and substantive components. *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013). "**Procedural unconscionability addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power,**" while "substantive unconscionability addresses the fairness of the term in dispute." *Id.; emphasis added.*

*1. T-Mobile's Cancellation clause was Substantively Unconscionable*

A contract term is substantively unconscionable if it "is so one-sided as to shock the conscience." *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 894 (9th Cir. 2002). In *Chavarria*, the Ninth Circuit found that an arbitration agreement was substantively unconscionable because it gave the employer unilateral control over key procedural rules and left the employee with no meaningful recourse. Likewise, here, T-Mobile's unilateral right to cancel purchase orders at any time, for any reason, and without penalty or compensation imposes **no reciprocal risk** or burden on T-Mobile, while **imposing all risk** on the counterparty. Such a term undermines the mutuality of obligation essential to contract law and provides T-Mobile with a **cost-free exit**, regardless of the other party's reliance or incurred expenses. This lopsided allocation of power and risk renders the clause substantively unconscionable.

### 2. T-Mobile's cancellation clause was also procedurally unconscionable

Procedural unconscionability focuses on "oppression or surprise due to unequal bargaining power." *Concepcion*, 563 U.S. at 340; *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001) (cited favorably in Ninth Circuit decisions). Courts consider whether the clause was non-negotiable, hidden in fine print, or imposed in a contract of adhesion.

In this case, the cancellation clause by T-Mobile in a **take-it-or-leave-it format**—a hallmark of procedural unconscionability. As the Ninth Circuit emphasized in *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006)

(en banc), "[a] contract of adhesion—'a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms'—presents the element of procedural unconscionability." T-Mobile's bargaining power, as a dominant market actor, effectively deprived the counterparty of any meaningful ability to negotiate or reject the cancellation clause.

Further, where the cancellation clause is buried in dense or lengthy contractual documents, as is the case here, with no reasonable notice or meaningful opportunity to understand its implications, it constitutes "surprise," another hallmark of procedural unconscionability. *Chavarria*, 733 F.3d at 922.

D.  <u>Under Well-Established U.S. Supreme Court and Ninth Circuit Precedent, a Declaratory Judgment Claim is not Duplicative of a Breach of Contract Claim Where it Seeks Resolution of a Distinct Legal Issue, Such as the Enforceability of a Contractual Provision.</u>

Contrary to T-Mobile's Answering Brief and the lower court's ruling, Unimax's declaratory judgment claim under Rule 12(b)(6), presented a justiciable controversy and served the useful purpose of clarifying the parties' ongoing legal rights under the disputed contract.

The Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes federal courts to "declare the rights and other legal relations of any interested party seeking such declaration." The purpose of the Act is to afford parties a mechanism to obtain clarity and resolution of legal disputes before irreparable harm occurs or before coercive remedies must be pursued. As the U.S. Supreme Court has explained, "[t]he Declaratory Judgment Act was designed to relieve potential defendants from

7

the Damoclean threat of impending litigation without requiring them to act first." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

Thus, courts have consistently held that a claim for declaratory relief is not automatically duplicative of a breach of contract claim simply because both relate to the same agreement. *See*, *Id.* at 135–36 (explaining that declaratory relief may clarify legal obligations and avoid unnecessary litigation). The Ninth Circuit has held that dismissal of a declaratory judgment claim is not proper under Rule 12(b)(6) merely because there is a related breach of contract claim. "[A] claim for declaratory relief should not be dismissed where it will serve a useful purpose in clarifying and settling the legal relations in issue." *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 n.5 (9th Cir. 1998) (en banc) (cleaned up).

Declaratory relief is particularly appropriate where the parties dispute the interpretation or enforceability of a specific contractual provision, and the declaration sought would clarify future conduct or prevent further uncertainty. See *Seattle Audubon Soc'y v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996) (noting the value of declaratory relief in determining rights under a statute or agreement). This is especially true where a declaratory judgment may inform the scope of injunctive or other non-monetary relief.

Unimax's declaratory judgment claim was not duplicative of its breach of contract claim because it seeks a judicial determination regarding the enforceability of T-Mobile's cancellation provision. While a breach of contract

claim seeks retrospective monetary or equitable relief for a completed violation, a declaratory judgment seeks prospective clarification of rights—specifically, whether T-Mobile's cancellation clause is valid, unconscionable, or otherwise unenforceable. Courts distinguish between a breach claim, which focuses on past conduct, and a declaratory claim, which addresses present or future obligations under a disputed provision. *See*, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) [**allowing declaratory relief in conjunction with claims based on misrepresentation and unfair practices**]. Here, Unimax sought an authoritative declaration that the cancellation clause was void or waived, which would impact rights and obligations going forward, beyond the remedy available through the breach claim alone.

Moreover, the court's premature dismissal under Rule 12(b)(6) was inappropriate, as the Declaratory Judgment Act authorizes claims even absent a breach, so long as an actual legal controversy exists. *See*, *MedImmune*, 549 U.S. at 127. The controversy over the enforceability of the cancellation clause, and the rights that follow from it, clearly meets this standard.

> T-Mobile's Invocation of its Contractual Rights Does not Foreclose Tort Liability Where, as Here, the Manner of Performance was Unjustified and Intentionally Injurious.

The district court's dismissal of Unimax's tortious interference claim under Rule 12(b)(6) was erroneous. Under *Iqbal*, *Twombly*, and Ninth Circuit precedent, Unimax pled sufficient factual matter to establish a plausible claim that:

1.    It had a valid business expectancy with Great Talent;

2.    T-Mobile knew of this expectancy;

3.    T-Mobile acted improperly—motivated by bad faith or intent to harm—by issuing oral assurances and then canceling the orders; and

4.    This conduct caused economic harm.

### 1. *Unimax adequately pled tortious interference with business expectancy under federal pleading standards*

To survive a Rule 12(b)(6) motion to dismiss, a complaint need only include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not require detailed factual allegations; it requires "***more than a sheer possibility that a defendant has acted unlawfully***." *Iqbal*, 556 U.S. at 678. As the Ninth Circuit has made clear, the court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017).

Unimax's complaint met this standard. It alleged (1) the existence of a valid business expectancy with its supplier, Great Talent, (2) T-Mobile's knowledge of that expectancy, (3) intentional interference through its bad-faith cancellation of purchase orders, and (4) resulting harm to Unimax. These are the essential elements of a tortious interference claim under both **federal standards** and **Washington law**. See *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wash.

2d 342, 351–52, 144 P.3d 276 (2006) The district court erred by demanding a level of specificity—such as exact dates, communications, or names of individuals involved—that far exceeds what *Iqbal* requires. At the pleading stage, a plaintiff need only allege enough facts to allow the court to infer that the defendant is liable; discovery is the proper stage to demand granular evidence.

### 2. T-Mobile's conduct was improper despite its contractual rights

The existence of a contractual right—such as T-Mobile's right to cancel orders—does not T-Mobile afrom liability for tortious interference. As the Ninth Circuit has held, ***"[a] party may be liable for tortious interference even if it acted pursuant to a contractual right, where the manner of exercising that right was wrongful.***" *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 56 (1998), cited with approval in *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 909 (2007) (noting that lawful actions may still be tortious if done with an improper motive).

Under Washington law, conduct may be "improper" if it involves deceit, bad faith, or actions taken with intent to harm another's business. See *Pleas v. Seattle*, 112 Wash. 2d 794, 804, 774 P.2d 1158 (1989); *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wash. 2d 133, 157, 930 P.2d 288 (1997) (explaining that even lawful conduct may be tortious if done for an improper purpose). Here, Unimax alleged that T-Mobile provided **oral assurances** in January 2023 affirming its commitment to the orders and business relationship—inducing reliance and

continued performance by Unimax and its supplier. Then, without notice and in contradiction of those assurances, T-Mobile abruptly cancelled the orders, knowing it would disrupt Unimax's supply chain. Such conduct, especially when done with knowledge of Unimax's obligations and economic dependence, supports a plausible inference of bad faith and an intent to injure Unimax's business relationships

### 3. *Unimax sufficiently alleged a valid business expectancy with Great Talent*

This Court has emphasized that a valid business expectancy includes **"a relationship or understanding that would likely produce a future economic benefit."** *Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 975 (9th Cir. 2008). Washington law likewise recognizes business expectancy claims where a plaintiff has an ongoing commercial relationship with a third party, even if the relationship is not memorialized in a formal contract. *Pac. Nw. Shooting Park*, 158 Wash. 2d at 351–52.

Unimax's complaint plausibly alleged that it had an established business relationship with Great Talent—its supplier—which was disrupted by T-Mobile's wrongful cancellation of purchase orders. The complaint further alleged that T-Mobile knew of this relationship and acted with awareness that its conduct would impair or destroy it. These facts meet the pleading requirements under Rule 8 and federal case law, and they support a claim for interference with business expectancy.

As evidenced by the record, Unimax adequately pleaded the elements of tortious interference with prospective economic advantage. Specifically, Unimax asserted that it had a valid business expectancy with its supplier, Great Talent, and that T-Mobile's cancellation of purchase orders interfered with that relationship. In assessing the underling averments, it is clear that T-Mobiles actions were improper because they were motivated by bad faith or an intent to harm Unimax's business. Additionally, the district court improperly applied the *Iqbal* standard by requiring an excessive level of detail in the pleadings.

E.  <u>Both Under U.S. Supreme Court and Ninth Circuit Authority, Misrepresentations of Present Intent are Actionable as Fraud or Negligent Misrepresentation.</u>

The district court's dismissal of Unimax's **fraudulent and negligent misrepresentation claims** was in error. Under binding U.S. Supreme Court and Ninth Circuit precedent:

- Misstatements of present intent are actionable;

- Unimax adequately pled the "who, what, when, where, and how" of the fraud under Rule 9(b); and

- The allegations, taken as true, plausibly suggest that T-Mobile misrepresented its intent to proceed with purchase orders, causing foreseeable reliance and harm.

Accordingly, the claims were sufficiently pled to survive dismissal under Rule 12(b)(6), and the decision below should be reversed.

13

### 1. Unimax adequately alleged actionable misrepresentations of present intent, not mere future promises

It is well-settled that under both U.S. Supreme Court and Ninth Circuit authority, misrepresentations of present intent are actionable as fraud or negligent misrepresentation. A false statement concerning a party's then-existing intent to perform is distinguishable from a mere breach of contract or unfulfilled future promise. As the U.S. Supreme Court has recognized, a knowingly false representation of an existing fact—including a party's present state of mind—is a proper basis for fraud. *Restatement (Second) of Torts § 530* (cited approvingly in *Field v. Mans*, 516 U.S. 59, 70–71 (1995)). The Ninth Circuit likewise holds that "[a] promise made without a present intention to perform is actionable fraud." *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996), adopted in Ninth Circuit practice; see also *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1152 (9th Cir. 2010).

Here, Unimax's complaint alleges that in January 2023, T-Mobile made oral assurances that it intended to proceed with purchase orders and maintain its commercial relationship. These representations were not forward-looking speculation, but statements reflecting T-Mobile's then-existing intent. The subsequent abrupt cancellation of the orders supports a strong inference that those assurances were knowingly false or made with reckless disregard for the truth.

14

**2.** *Unimax's Amended Complaint sufficiently pled fraud and negligent misrepresentation with particularity under Rule 9(b)*

Federal Rule of Civil Procedure 9(b) requires that fraud be pled with particularity, including the **"who, what, when, where, and how"** of the alleged misconduct. However, the Ninth Circuit does not require "factually exhaustive" pleadings and instructs courts to be mindful of practical limits at the pleading stage. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547 (9th Cir. 1994) (en banc). Further, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); see also *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003). Unimax's complaint satisfies this standard. It identified:

- **Who** made the misrepresentations: agents of T-Mobile;

- **What** was said: T-Mobile affirmed its present intent to move forward with the orders;

- **When and where**: in oral conversations in **January 2023**, during negotiations with Unimax;

- **How** Unimax relied: by proceeding with supplier commitments and incurring substantial costs;

- **Resulting harm**: losses from canceled production, stranded inventory, and reputational damage.

These averments give T-Mobile adequate notice of the nature of the claims and enable it to prepare a response—precisely what Rule 9(b) requires. The district court's ruling ignored the Ninth Circuit's direction that fraud claims "must be read

15

in context" and not dismissed based on a hypertechnical parsing of details. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

### 3. The district court improperly applied rule 12(b)(6) by demanding evidentiary detail at the pleading stage.

Dismissal under Rule 12(b)(6) is inappropriate where the complaint pleads sufficient facts to support a plausible inference of misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The district court erred by requiring Unimax to include evidentiary detail, such as exact wording or written confirmation, even though such detail is not required at the pleadings stage and is often unavailable prior to discovery.

The Ninth Circuit has warned courts not to apply Rule 9(b) so rigidly that it "effectively eliminate[s] meritorious claims before discovery." *Balderas v. Countrywide Bank, N.A.*, 664 F.3d 787, 790 (9th Cir. 2011). Here, the complaint alleges sufficient factual content to raise a reasonable inference of fraud and misrepresentation and should have proceeded to discovery. Unimax's Fraudulent and Negligent Misrepresentation claim is actionable because it is based on T-Mobiles alleged oral assurances, which Unimax relied upon to its detriment. These assurances were not merely promises of future performance but were representations of T-Mobiles present intent to proceed with the purchase orders. T-Mobiles subsequent cancellation demonstrates that the assurances were made with knowledge of their falsity or with reckless disregard for the truth.

The district court erred in dismissing the claim for failure to plead with particularity under Rule 9(b). Again, Unimax provided sufficient detail regarding the time, place, and content of the alleged misrepresentations, as well as the reliance and damages resulting from them.

F. The Court's Failure to Correct Misapplication of Substantive Law Under the UCC, and its Refusal to Allow Even a Single Opportunity to Further Amend a Complex Commercial Pleading.

The U.S. District Court abused its discretion in denying Unimax's motion for reconsideration. The court's failure to correct a misapplication of substantive law under the UCC, and its refusal to allow even a single opportunity to amend a complex commercial pleading, warrants reversal under binding U.S. Supreme Court and Ninth Circuit authority. Unimax respectfully requests that this Court reverse the denial of reconsideration and remand with instructions to permit amendment of the complaint.

The district court abused its discretion in denying the motion for reconsideration. Specifically, the motion presented new evidence or legal arguments that the court failed to consider. For example, the lower court overlooked the applicability of the UCC and failed to adequately address the unconscionability of the cancellation provision. The lower court's refusal to allow further amendment of the complaint was an abuse of discretion, particularly given the complexity of the issues and the potential for curing any deficiencies in the pleadings.

### III.    CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed, the court order of dismissal and judgment be vacated and the case remanded for consideration of Appellant's claims on the merits.

*Respectfully submitted this 12th day of May, 2025.*

**CHUNG, MALHAS & MANTEL, PLLC.**

*/s/ Edward C. Chung*
Edward C. Chung, WSBA # 34292
Attorney for Appellant,
Unmiax Communications, LLC

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,995 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

*Dated this 12th day of May, 2025*

*/s/ Edward Chung*
Edward C. Chung, WSBA# 34292
Attorney for Appellant,
Unimax Communications, LLC

## CERTIFICATE OF SERVICE

I, Edward C. Chung, counsel for the Appellant, hereby certify that on May 12, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate Appellate Case Management System (ACMS) system. Participants in the case who are registered ACMS users will be served by the appellate CM/ECF system.

*Dated this 12th day of May, 2025.*

*/s/ Edward Chung*
Edward C. Chung, WSBA# 34292
Attorney for Appellant,
Unimax Communications, LLC